# Geis *v.* Tennessee Coal, Iron and Railroad Company.

*Action by Employee to Recover Damages for Personal Injuries.*

1. *Master and servant; duty of employer to light premises; when risk assumed by employee.*—Where, in an action by an employee for personal injuries, it appeared that the plaintiff was in-

[Geis v. Tennessee Coal, Iron and Railroad Company.]

jured in the night time, by walking out of the usual route of travel from the defendant's mill to the street, and thereby falling into a railroad cut below, that the usual route was sufficiently lighted for him to see how to travel it with perfect safety, and, though partially obstructed, he could have walked around the obstruction without leaving the usual route, the defendant discharged its duty to plaintiff when it provided a safely lighted way out of its premises, and, when defendant departed from that way, he assumed the risk incident to the route voluntarily selected by him.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

Action by appellant against appellee to recover damages for personal injuries, received by appellant on the premises of the appellee, and while in its employ. The facts are sufficiently stated in the opinion of the Court.

Upon the introduction of all the evidence, the court gave the general affirmative charge for defendant. There were verdict and judgment for defendant, and plaintiff appeals.

A. O. LANE and HUME F. JONES, for appellant.—The defendant cannot, with impunity, leave a dangerous place near where its employees are accustomed to travel, and discontinue the use of lights, and leave the dangerous place unguarded.—*M. & E. R. R. Co. v. Thompson,* 77 Ala. 456. When the defendant blocked the usual route of travel, and neglected to put a guard rail around the edge of the platform, it laid itself liable to plaintiff for whatever injuries such negligence entailed.—*Ind. etc. Co. v. Neusbaum,* 5 Am. Neg. Repts. 126.

PERCY & GRUBB, *contra.*—The appellant assumed the risk of leaving the travelled path, when he attempted to cross the railroad track at a point out of the path.—*M. & E. R. R. Co. v. Thompson,* 77 Ala., 458.

TYSON, J.—This action was brought by plaintiff to recover for personal injuries suffered by him, occasioned by falling into what is denominated in the pleadings as a "hole," on the premises of the defendant.

The important question presented for decision is, whether the defendant, under the facts disclosed by the testimony, owed plaintiff any duty to light at night its entire premises. If no duty rested upon it to do so, clearly the plaintiff is not entitled to recover and the affirmative charge given at defendant's request was proper.

On the premises of defendant, which was enclosed, were a bar mill, two iron furnaces, a warehouse, a tram track, a railroad track upon which cars were loaded for the transportation of the products of the plant, platforms, tram cars and the like. From the bar mill to the street, a distance of about 250 feet, was a path along a platform twelve or fifteen feet in width, which was the usual route of travel for the employees going from the mill to the street. In the center of this platform was a tram track, a portion of the way, about two feet wide upon which the tram cars were loaded and operated. On the west side of the platform on which the tram track is laid is what is called the "hot beds," or, more correctly speaking, the moulds into which is deposited the molten iron as it flows out of the furnace. On the east side of the platform near its center is a "cut," some four feet deep, extending in an easterly direction, in which is located the railroad track. Immediately north of the "cut," and along the side of it, is a platform from which the cars are loaded, by shoving the iron into the doors of the cars, which are on a level with the platform. It was into this "cut" that plaintiff fell and received his injuries.

The plaintiff, it appears, started about 10 o'clock on a dark night from the bar mill, where he had been at work, down the path to the street. This path was sufficiently lighted by the "hot beds" for him to see how to travel it in perfect safety. After he had gone along it about twenty-five feet. he discovered that in the path were two tram cars, on which iron was being loaded, and two rolls, lying across the track and platform. The tram cars were about three feet wide and extended six inches over each side of the track. The rolls were about six inches high and extended across the platform on each side of the track. To avoid these supposed obstructions to his passage along the path or platform, the plaintiff volunta-

rily and consciously turned out into the darkness and walked a distance estimated by him from seven to fifteen feet, when he fell into the railroad cut.

It is clear from the plaintiff's testimony that he was not misled by the absence of light into believing that he was still pursuing the path; and it is equally clear from his testimony that his fall was not caused by his walking in the dark near to the outer edge of the path and not seeing the cut in which the railroad track was located. For, admittedly, if plaintiff's injury had resulted from falling into a hole in the path itself, or so near to it that, in attempting to follow the path in the dark, he fell into the hole, or if, because of defendant's failure to light the path, the plaintiff had strayed from it while attempting to follow it, and after so straying from it fallen into the hole, the defendant would be liable. But the evidence, as we have said, undisputedly shows that the path was safe and that it was lighted sufficiently for the plaintiff to have travelled it without risk. He could easily have walked around the tram cars and have stepped over the rolls. They were not serious or dangerous obstacles in his pathway. The plaintiff in leaving the path was not in the performance or discharge of any duty for the defendant. He was leaving his place of work on a mission of his own. The defendant had furnished for him a safe way of ingress and egress to and from its premises. It cannot be held to have invited or to have expected him to go to other parts of its premises where he had no business. As to those parts of the premises, he was a mere licensee and assumed the risk of being injured in attempting to go across them in the dark. For, confessedly, if the defendant neither invited or expected him to travel the route that he undertook to do, after leaving the path provided for him, no duty was imposed upon it to provide lights for his safe passage. In other words, the duty of defendant to light its premises and to keep them reasonably safe for passage applies only to such parts of its premises as it intended its employes to be about, or to travel over at night.

In Sherman and Redfield on Negligence (§ 704), speaking of liability to business visitors on the premises

of another, it is said; "The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. The extent, however, of his legal obligation is to use ordinary care and prudence to keep his premises in such condition that visitors may not be unnecessarily or unreasonably exposed to danger; and the mere fact that one is injured while on the premises is not evidence of negligence on the part of the proprietor. * * * * * But no one is exempt from the obligation of observing where he is going, especially in parts of the premises, not intended for general use, to which he was not invited. In entering or leaving premises, the visitor is bound to use the ordinary and customary place of ingress and egress, and, if he adopts some other way, he becomes a mere licensee, and cannot recover for defects outside, or not substantially adjacent to the regular way." The last clause of this quotation is applicable to the facts of this case and is a succinct statement of the principle of law by which we have been guided in our decision of the question before us.

Our conclusion, therefore, is that defendant discharged its full duty to plaintiff when it provided him a safely lighted way out of its premises, and, when he departed from that way, he assumed the risk incident to the route voluntarily selected by him. The case of *Ind. Pipe Line & R. R. Co. v. Neusbaum*, 5 Am. Neg. Rep. 126, relied upon by appellant, is not opposed to what we have said. In that case the defendant had provided no way or path as here for the plaintiff to travel. Besides, the condition of the premises and the surroundings were entirely different from those shown by the evidence in this case.

Affirmed.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.